UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 15-10308-RGS

JILL ELAINE SULLIVAN

v.

CAROLYN W. COLVIN
ACTING COMMISSIONER OF SOCIAL SECURITY

MEMORANDUM AND ORDER ON APPELLANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS TO REVERSE THE DECISION OF
THE COMMISSIONER

August 13, 2015

STEARNS, D.J.

Appellant Jill Elaine Sullivan seeks review of a final decision of the Commissioner of the Social Security Administration (SSA) adopting an Administrative Law Judge's (ALJ) determination that Sullivan is not disabled as defined by the implementing regulations of the Social Security Act (SSA).  *See* 20 C.F.R. § 404.1520(f).  The ALJ concluded that, while Sullivan is unable to return to any of her prior occupations, she is able to perform less physically demanding work.  Sullivan contends that the ALJ failed to give proper consideration to the medical evidence and the medical opinions offered by her treating sources. Sullivan's petition to the district

1

court is brought as a matter right pursuant to 42 U.S.C. § 405(g), after her application, motion for reconsideration, and request for review by the Appeals Council were denied.

## BACKGROUND

Sullivan was born on November 4, 1962. She is a high school graduate. She has worked as a housecleaner, personal care attendant, and homemaker. She lives with her husband and three children. One of her children suffers from Coffin-Lowry syndrome, a genetic condition similar to Down's syndrome. She occupies most of her days doing household chores and caring for her children. She goes to church weekly, where she leads a Bible study class and prayer group. On occasion, she goes to the beach with her family, does shopping, and takes her children to the park. Transcript (Tr.) at 49-54.

On January 25, 2012, Sullivan applied for Disability Insurance Benefits (DIB), claiming that pain and restlessness, resulting from a failed back surgery, chronic pain syndrome, and left leg neuropathy, has left her unable to work since August 1, 2010.[1]

---

[1] At the September 20, 2013 hearing, Sullivan amended her disability onset date from August 19, 2007, to August 1, 2010.

Sullivan's application was denied initially and after reconsideration. On September 20, 2013, ALJ Sean Teehan heard Sullivan's appeal. On December 23, 2013, the ALJ ruled against Sullivan. Upon the Appeals Council's denial on December 17, 2014, of Sullivan's request for further review, the ALJ's decision became the final decision of the Commissioner.

### *Medical Evidence*

Sullivan originally alleged that she became disabled on August 19, 2007, after being injured while working with a patient suffering from Down's syndrome. She had previously undergone a successful microdiscectomy for radiculopathy on her L5-S1 vertebrae in November of 2004. Sullivan worked full time from 2005 until the date of the 2007 accident. Tr. at 16. When re-examined in September of 2007, Sullivan's reduced sensory perception and Straight Leg Raise (SLR) test was positive past 25 degrees. *Id.* at 355. Dr. Efsthathios Papavassiliou, a neurosurgeon at the Beth Israel Deaconess Medical Center, diagnosed nerve compression as the source of Sullivan's S1 radiculopathy. He performed further surgery at the L5-S1 level the same month. The surgery was not successful, resulting in a diagnosis of failed back surgery syndrome. *Id.* at 57, 355, 420. During the year following the operation, Sullivan reported only occasional numbness and minimal pain. She described herself as "doing okay." *Id.* at 363.

3

In 2010, Sullivan presented to Dr. Joanna Wroblewska-Shah at the Norwood Pain Management Clinic, complaining of severe pain and "Charley horse" (cramp and spasms) in her left leg.  An examination, however, demonstrated a negative SLR.  She was prescribed drugs which offered some relief. After Sullivan reported fluctuations in her level of pain, she was prescribed a series of lumbar epidural steroid injections (LESI).  These were administered from March to July of 2011, and appeared to provide some relief.  *Id.* at 321-2.  In December of 2011, Sullivan was again diagnosed with lumbar radiculopathy and restricted Range of Movement (ROM).  In March of 2012, she underwent a MRI scan.  The reviewing physician at the Center for Diagnostic Imaging noted a synovial cyst which "markedly imping[ed]" on the left S1 nerve root.  *Id.* at 467.  From his own examination of the scan, Dr. Papavassiliou concluded that Sullivan had a L5-S1 synovial cyst which was "affecting" the same nerve root.  However, he counseled against further surgery.  He diagnosed Sullivan with degenerative disc disease (DDD) and prescribed a course of physical therapy.  *Id.* at 349.  The same month, Sullivan was treated by Lois Norton, a physical therapist, who noted a positive SLR past 45 degrees and palpitation of the bilateral SI joint and L5-S1, with limited ROM in her back.

In May of 2012, Sullivan complained of having tripped in her garden, striking her elbow. *Id.* at 367.  By July of 2012, Sullivan reported that the pain she was experiencing had become so acute that she could not sit on her left buttocks.  She also experienced sporadic, but acute pain in the left side of her groin and left leg. She presented to Dr. Christopher Hummel, an osteopath at Norwood Comprehensive Pain Management.  He diagnosed Sullivan with lumbar radiculopathy and chronic pain syndrome.  *Id.* at 408-9, 415.

Sullivan was seen by her primary physician, Dr. Charles Chen, in October of 2012.  After noting her symptoms, he opined that she was capable of working in low-stress jobs with certain restrictions.  *Id.* at 458-460. At a follow-up appointment with Dr. Hummel, Sullivan reported her back pain was "better although still bothersome." She also complained of leg spasms. *Id.* at 414.  In March of 2013, Dr. Hummel prescribed Baclofen for Sullivan's leg spasms, which appeared to help.  *Id.* at 469.  In August of 2013, Dr. Chen opined that Sullivan's diagnosis had not changed.  *Id.* at 430.

Sullivan testified during the hearing before the ALJ that she was regularly taking prescription Gabapentin, Baclofen, Fluoxetine, and Diazepam for muscular seizure and spasm, depression, and pain.  *Id.* at 48, 255.

## THE ALJ'S DECISION

The ALJ made the following written findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of August 1, 2010 through her date last insured of December 31, 2012.

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine with left radiculopathy and status post two spinal surgeries.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can sit for one hour at a time and for a total of 6 hours during the course of an 8 hour workday, she can stand for ½ hour at a time and for a total of 6 hours during the course of an 8 hour workday, she can walk for ½ hour at a time and for a total of 6 hours during the course of an 8 hour workday, she needs to stand every hour for 5-10 minutes, she can never climb ladders, ropes or scaffolds, she can occasionally climb ramps and stairs, she can occasionally balance, stoop, crouch, kneel, and crawl, she needs to avoid concentrated exposure to unprotected heights, hot and cold temperatures, humidity and environmental irritants, such as dust, fumes and gases and she has to avoid even moderate exposure to vibration.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on November 4, 1962 and was 50 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Through the dated [sic] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2010, the alleged onset date, through December 31, 2012, the date last insured.

## DISCUSSION

Judicial review is limited to a determination of whether the findings of the Commissioner are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The findings of the Commissioner will be upheld "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." *Rodriguez v. Sec'y of*

*Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).  However, the Commissioner's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

Disability determinations follow the "five-step sequential evaluation process" mandated by 20 C.F.R. § 404.1520.  The analysis requires that the ALJ first determine whether or not a claimant was gainfully employed prior to the onset of the disabling condition.  At the second step, the ALJ must determine whether a claimant suffers from a severe impairment limiting her ability to work.  If the impairment is the same as, or equal in its effect to, an impairment (or combination of impairments) listed in Appendix 1 of the regulations, the claimant is presumptively deemed disabled.  If the impairment is not covered by Appendix 1, the fourth step of the analysis requires that the claimant prove that her disability is sufficiently serious to preclude a return to her former occupation.  If she meets that burden, the Commissioner at the fifth step is obligated to prove that there are other jobs in the national economy that the claimant is able to perform.  *See Gonzalez Perez v. Sec'y of HEW*, 572 F.2d 886, 888 (1st Cir. 1978) ("[A] claimant must establish that she can no longer perform her prior vocation before the

government is obligated to prove that alternative employment is available for a person in claimant's condition.").

The ALJ found at Step One that Sullivan has not engaged in substantial gainful employment since August 1, 2010. The ALJ also concluded that Sullivan had the following severe impairments: DDD of the lumbar spine with left radiculopathy and status post two spinal surgeries. At Step Three, he concluded that these impairments did not meet or medically equal one of the Appendix 1 impairments.  He therefore proceeded to Step Four.

Steps Four and Five of the analysis require an assessment of a claimant's residual functional capacity (RFC).  *See* 20 C.F.R. § 404.1545(a)(5).  To evaluate the RFC, the ALJ must follow a two-step process to: (1) determine whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the complained of pain or other symptoms; and (2) if such an impairment exists, to determine the extent to which it limits her ability to do basic work activities.  This latter determination requires an evaluation of the intensity, persistence, and limiting effects of the claimant's symptoms.  *See id.* § 404.1545(a)(2)-(3).

At Step Four, the ALJ determined that the impairments suffered by Sullivan could reasonably explain her alleged symptoms, but that Sullivan's

complaints about the intensity, persistence, and limiting effects of these symptoms were "not entirely credible."  Tr. at 16.  The ALJ then proceeded to Step Five: the determination of whether — in light of Sullivan's RFC, age, education, and work experience — she retains the capacity to perform appropriate and available work in the national economy.   The ALJ determined that Sullivan could perform the requirements of light level work, giving as examples a box office cashier, parking cashier, or photo copier operator.

On appeal, Sullivan maintains that the ALJ's opinion was not supported by substantial evidence in two respects: (1) that the ALJ failed to consider Listing 1.04A in his determination at Step Three; and (2) that he failed to properly evaluate the medical opinions of her treating sources.

### *The ALJ's Application of the Law*

Sullivan first contends that the ALJ erred at Step Three by failing to explain his determination whether her lumbar DDD with radiculopathy met or equaled Disability Listing 1.04A when evaluating her claim at Step Three.[2]

---

[2] At issue is 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04 — the listing that covers disorders of the spine.  Listing 1.04A describes the criteria Sullivan must meet or equal to merit a conclusive presumption of disability caused by a compromise of a nerve root or the spinal cord:

Sullivan maintains (and the court agrees) that she has made out a prima facie case that she suffers from a spinal disorder. Appellant Br. at 10. She marshals as evidence that

> [d]espite two surgeries, her most recent MRI still shows that her left S1 nerve root was "markedly imping[ed]" by what her surgeon described as a synovial cyst along with collapse of the L5-S1 disc space due to her prior surgeries. (Tr. 349; 467). Her record also shows persistent limited ROM in her lumbar spine with neuroanatomical distribution of pain in an S1 nerve distribution into her left leg and foot (supra) and intermittent objectively displayed numbness, weakness and loss of reflexes in her left leg with positive SLR's on the left corresponding to her pathology. (See e.g. Tr. 349; 429-30; 436-37). Indeed, when the separate muscles groups of Ms. Sullivan's left leg were tested individually (as opposed to a gross exam) when her pain worsened in 2012 and her S1 nerve root pathology was upgraded to "markedly impinged" (before the alleged onset date, it was only abutted), she displayed significant reduced motor strength in the muscles of her left leg. (Tr. 437).

*Id.*

Step Three of the sequential evaluation process serves an important institutional interest of the SSA in preserving its ability to process DIB claims. As the Supreme Court has noted, a presumption of disability arises when at

---

> [e]vidence of nerve root compression characterized by [1] neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, [4] positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A.

Step Three a claimant's impairment meets or equals an impairment in the Listing. This conclusive presumption "grow[s] out of the need to administer a large benefits system efficiently." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999). Thus, when a Listing is met (and the associated durational requirement is satisfied), the claimant is deemed disabled and there is no need for a Step Four and Step Five determination. *See* 20 CFR § 404.1520(a)(4)(iii).[3]

Because of its centrality in the decision whether or not to award disability benefits, an ALJ's determination at Step Three is often the most closely examined aspect of his analysis on appeal. Sullivan argues that at Step Three, "in considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing," as in her case. Appellant's Br. at 11, quoting *Stratton v. Astrue*, 987 F. Supp. 2d 135, 145 (D.N.H. 2012). This is true to a point. While "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not" meet or equal a listed impairment, *Durbin v. Astrue*, 2011 WL 5877462, at *11 (W.D. Wash. Nov. 4, 2011), quoting *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), it is not, in

---

[3] At the time *Cleveland* was decided (in 1999), the Step Three determination accounted for some 60 percent of all DIB awards. *Id.* at 804.

and of itself, adequate reason to set aside the ALJ's finding. *See Stratton*, 987 F. Supp. 2d at 145, citing *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004). "Rather, the focus must be on whether there exists substantial evidence in the decision as a whole for the [S]tep [T]hree determination." *Stratton*, 987 F. Supp. 2d at 145-146, citing *Reyes Robles v. Finch*, 409 F.2d 84, 86 (1st Cir. 1969). At the same time, while for a substantial evidence review to be meaningful, "[t]he record should include a discussion of which evidence the ALJ found credible [in making the Step Three determination] and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295, 292 (4th Cir. 2013) (agreeing with the district court that an ALJ's summary statement that the applicant was not qualified under Listing 104A, among others, without giving any basis for his conclusion, "failed to apply the requirements of the listings to the medical record"). I see no real distinction between Sullivan's and Radford's case, and like the Fourth Circuit in *Radford*, I conclude that a remand is necessary.[4]

---

[4] In all but the most exceptional cases, where error is found, the remedy is a remand for further proceedings rather than an order to pay benefits. *Seavey v. Barnhart*, 276 F.3d 1, 12 (1st Cir. 2001). Here as in *Radford*, there is conflicting evidence suggesting that Sullivan does not satisfy Listing 1.04A. In support of his findings at Steps Four and Five, the ALJ noted that, on a number of occasions between 2011 and 2012, Sullivan reported that her back pain had improved and that she was responding well to analgesic and

## ORDER

For the foregoing reasons, the determination of non-disability is REMANDED to the ALJ for reconsideration of the finding under Step Three of the sequential evaluation process.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

anticonvulsant drugs, such as meloxicam and neurontin. ALJ Dec. at 16-17. The ALJ also pointed to Sullivan's "extensive [non-work] activities," which he deemed incompatible with her account of the severity of her symptoms. He also gave "significant weight" to the State Agency doctors' opinions, judging them "consistent" with Sullivan's activities and the "objective clinical findings" in Sullivan's treating record. *Id.* at 18. These are matters for the ALJ to resolve on his reanalysis of Step Three on remand. "[R]esolution of conflicts in the evidence or questions of credibility is outside the [district] court's purview, and thus where the record supports more than one outcome, the ALJ's view prevails as long as it is supported by substantial evidence." *Pires v. Astrue*, 553 F. Supp. 2d 15, 21 (D. Mass. 2008).